Alfred M. Hickman v. Commissioner.
Hickman v. Commissioner
Docket No. 21573.
United States Tax Court
1953 Tax Ct. Memo LEXIS 401; 12 T.C.M. (CCH) 34; T.C.M. (RIA) 53017; January 21, 1953
*401 Petitioner sustained a loss by reason of hurricane damage to his property occurring in 1944. Held that respondent is correct in disallowing the loss claimed as a deduction for the year 1945, this being neither the year in which the identifiable event causing the damage occurred nor the year 1947 in which a litigated claim against the petitioner's insurer was settled. The basis determined for allowance for the year 1945 of depreciation upon certain real and personal property used by petitioner in trade or business. Alfred M. Hickman, pro se. Brooks Fullerton, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent has determined a deficiency in income tax of $1,388.44 for the calendar year 1945. Three issues *402 are presented: (a) Whether a casualty loss sustained by petitioner as a result of a hurricane striking his summer home at Cape May, New Jersey, on September 14, 1944, may be taken as a deduction, under section 23 (e), Internal Revenue Code, from income for the year 1945. (b) The amount of such loss. (c) Did respondent err in reducing the basis used by petitioner for computing depreciation on the house and furniture for the calendar year 1945? Findings of Fact The petitioner, Alfred M. Hickman, is an individual residing at 311 South Camac Street, Philadelphia, Pennsylvania. His income tax return for the taxable year 1945 was filed with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia, Pennsylvania. In the early spring of 1940 the petitioner purchased a cottage and lot known as 815 Beach Avenue, Cape May, New Jersey, for the sum of $4,000. This purchase was from the City of Cape May, the cottage having been abandoned and taken over by the City for taxes. The cottage was furnished and the price paid included such furnishings. Subsequent to the acquisition of this property petitioner used the furniture therein as *403 the cottage furniture, new window drapes, new mattresses for the beds, linens, and kitchen utensils being purchased. The aforementioned property had been vacant for some time and at the time of its acquisition was in a bad state of repair. During the summer of 1940 petitioner made extensive repairs in reconditioning it which he estimates to have been at a cost of not less than $6,000. Among the repairs were a new roof costing from $1,500 to $1,800, the installation of a kitchen sink, new gas stove and hot water heater, the renewing of the kitchen floor, the removal of paper from the walls and the painting of such walls, and the installation of an additional bathroom in the house. A shed at the rear of the house was converted into a garage with doors, the water and electric systems in the house were renewed, and the house was repainted. The house was quite large, having six bedrooms and two baths on the second floor and two bedrooms and a bath on the third floor. Upon completion of the repairs fire insurance with extended coverage was taken on the premises in the sum of $4,500. Petitioner and his wife were divorced in 1941 or 1942. At that time his home was in Cynwood, Pennsylvania. *404 After this divorce he gave up that home and also abandoned use of the summer home at Cape May, New Jersey. It was rented to tenants for the month of August 1943 and July and August 1944. It was only a summer residence and not constructed for winter occupancy. It was accordingly converted to business property as of August 1, 1943, at which time the house had a fair market value of not less than $5,500. Petitioner had been in the textile business but severed his connection therewith in 1942 and entered law school at the University of Virginia in the fall of that year. On the abandonment of his home at Cynwood, Pennsylvania, the furniture there was moved to the summer home at Cape May for storage purposes. The latter property was fully furnished and the furniture from Cynwood was not used as furnishing thereof but was merely stored there to save expense. On September 14, 1944, a hurricane struck the coast of New Jersey, doing considerable damage, and petitioner received a wire at the University of Virginia that his cottage had been badly damaged. He did not wish to leave the University for a trip to Cape May at that time as his examinations were approaching, and did not go to see *405 the extent of the damage until November. The Cape May cottage was on the beach front and the boardwalk upon which it faced had been torn up by the high tide and some of the timbers carried against the front of the house, knocking down two of the four small pillars or pilasters supporting the roof of the front porch. The front doors of the house had been driven in by the aforesaid timbers or the force of the water, and the water had entered onto the first floor of the house carrying sand which was twelve to eighteen inches in depth in places. The flood had washed out the foundations of the house in places and a tremendous amount of sand had been carried onto the front lawn filling it to a depth of almost the level of the front porch. In addition to the damage to the house, this deposit of sand constituted in itself a considerable damage, as its removal could only be effected at heavy expense. However, it was voluntarily removed by the City of Cape May with trucks and bulldozers. In this work the concrete paving in front of the house was broken by the bulldozers and the cost of the repair to such paving was included in the total cost of repairs made to the premises in 1945 and allowed *406 by respondent as a deduction for casualty loss in 1944. As a result of the great damage on the New Jersey coast from the hurricane, all available building and repairmen had their hands full of work and petitioner was unable to secure the services of anyone at that time to put the house in condition or to make an estimate as to the damage. At the time petitioner first heard of the hurricane and damage he notified his insurance company and was advised by them that the matter would be taken under consideration. The company did not either admit or deny liability for the damage until sometime near the close of the year 1945 or until 1946, at which time they denied liability for the water damage and only admitted liability under the extended coverage of the policy for the wind damage, which was very minor. Petitioner finally secured the services of building contractors to restore the damage. The work of reconditioning was done in 1945, petitioner expending in that year for such reconditioning the sum of $3,059.18. After this work of reconditioning the premises were in very good condition and were sold by petitioner in June of the following year for $13,100. Petitioner in his income *407 tax return for 1945 deducted as a casualty loss for "Hurricane and Water Cape May" the sum of $4,200. This deduction was disallowed by respondent in determining the deficiency for that year, but the amount expended by petitioner for repairs in the sum of $3,059.18 was allowed by respondent as a deduction for 1944, the year in which the damage occurred, this allowance resulting in the computation of an overassessment for that year. On his return for 1945 petitioner computed depreciation upon a basis of $5,500 for the house at Cape May and $5,000 for the furniture, the deduction taken being in the sum of $775. In determining the deficiency respondent reduced the cost basis on the house from $5,500 to $3,500 and the cost on the furniture from $5,000 to $1,000, thereby reducing the allowable depreciation from $775 to $261.81. Petitioner instituted suit for the damage to the Cape May property against the insurance company in 1946, which suit was settled in 1947 for the sum of $1,200, this amount being included by petitioner in his gross income reported for that year. Opinion The deficiency notice upon which this proceeding is based covered both the years 1944 and 1945. However, *408 upon the hearing, respondent moved to dismiss as to 1944, as no deficiency but an overassessment was determined for that year. Petitioner agreed that such action was proper, and the motion was sustained. We have accordingly only the year 1945 before us. We have given careful consideration to the evidence presented in this proceeding. It is very unsatisfactory, being indefinite as to amount of the cost of property which is the basis of petitioner's claim for casualty loss. The petitioner is shown to have acquired the Cape May property in 1940 at a cost of $4,000 from the City of Cape May. It was an ocean-front summer cottage in a very bad state of repair and had been abandoned, together with its furnishings, by the owner and taken over by the City for taxes. Petitioner has made no attempt to allocate that portion of the $4,000 cost which pertained to the real estate, but it is manifest that the improvements and furnishings could have played but a small part in the cost of the property. Petitioner made considerable repairs to this property in 1940 but kept no detailed record. He testifies that many of the items of expense were paid for in cash and we have merely his estimate that *409 the cost was not less than $6,000. He testifies, however, to certain items of repair which manifestly cost a substantial amount. These were a new roof, replacement of some doors, construction of a new floor in the kitchen, and the installation of a kitchen sink, a gas stove and a water heater. The house was of considerable size and the electric wiring and the plumbing were renewed, the floors refinished and the walls painted. There was also installed an additional bathroom, and what had been a shed at the rear of the building was converted into a garage with doors. No new furnishings were purchased for the house with the exception of new mattresses for the beds, window drapes, bed and table linen, and kitchen utensils. These premises were occupied as a summer cottage by petitioner and his family for two or three years, at the end of which time petitioner and his wife were divorced and he abandoned the idea of further occupancy and rented the property for periods during the summers of 1943 and 1944. It is very difficult to determine from the evidence the extent of the damage to this property by the hurricane of September 14, 1944. We cannot take petitioner's statement that after the *410 damage the property "was not worth a nickel." The only thing that appears to be definitely established is that there was substantial damage to the first floor (together with the front porch), the main damage appearing to be the washing out of the foundations at places which were renewed in 1945 at a cost of approximately $1,600. There is no evidence as to damage to the premises above the first floor, nor is there any proof in detail of damage to the improvements made by petitioner at the claimed cost of approximately $6,000 shortly after the acquisition of the property. Petitioner did not go to see the premises until some two months after the hurricane struck, and testifies that it was impossible for him to secure an estimate of the damage until 1945. In that year the work of repair was done at a cost of $3,059.18. After these repairs, according to the testimony of petitioner's witness, the contractor who did the largest item of repair, the house was in "very good condition." This evidence we think is supported by the fact that petitioner a few months thereafter sold the premises for $13,100, and discredits the testimony of petitioner that after the 1945 repairs were made and at *411 the time the house was sold it was still "in a sad state of repair." The foregoing discussion and review of evidence has been with respect to the question of the amount of damage sustained. There remains the question as to when the damage established and sustained may be deducted. The damage was in fact incurred in 1944. Petitioner contends that it was impossible for the extent of the damage to be ascertained in that year and that consequently he has a right to postpone the deduction until the extent of the damage could be determined in amount. Petitioner's return for 1944 was not due to be filed until the spring of 1945, and it is difficult to understand why it was not possible to determine the extent of the damage prior to the filing of the return for 1944. Petitioner, however, contends that he is entitled to postpone the ascertainment of the damage because of the fact that his claim against the insurance company under his fire insurance with extended coverage policy in the sum of $4,500 on the property was pending and unsettled by the insurer. It appears that the insurance company made no definite admission or denial of liability during 1944, but argued the question as to whether *412 the liability was limited wholly to windstorm damage, which was comparatively trivial, or included damage from the high tide. Claim for the latter type of damage was definitely denied by the insurance company late in 1945 or early in 1946. Petitioner brought suit against the insurance company in 1946 which was settled in 1947 for $1,200. Petitioner cites Commissioner v. Harwick, 184 Fed. (2d) 835; Rose Licht v. Commissioner, 37 B.T.A. 1096; Niagara Share Corporation of Maryland v. Commissioner, 82 Fed. (2d) 208; Cahn v. Commissioner, 92 Fed. (2d) 674; H. P. Robertsonco., 14 B.T.A. 887. These cases all consider the question as to whether the loss should be taken in the year the damage occurred and the insurers, guarantors, or tort-feasors deny liability, or whether it should be taken in the year of settlement between the taxpayer and the insurers, guarantors, or tort-feasors. These decisions would have some bearing if petitioner were asking the deduction of a casualty damage for the first time in the year 1947, when the insurance claim was finally settled for $1,200. However he is here asking its deduction for the year *413 1945, and we cannot see any condition which would permit him to seek this year to assert his claim for a deduction from gross income. As heretofore stated, we cannot conclude on this record that there was a casualty damage sustained by petitioner of any amount exceeding $3,059.18, the amount expended for repairs in 1945. The deduction of this amount for the year 1944, which was the year in which the damage actually occurred, has been allowed by respondent and the credit of this full amount has been given against petitioner's gross income for that year, resulting in a determination of overassessment which presumably will be paid or credited to petitioner. We think respondent properly disallowed the loss deduction as claimed for the year 1945, which year was neither the year in which the identifiable event causing the loss occurred nor the year in which the insurance claim was settled. See United States v. S. S. White Dental Manufacturing Co., 274 U.S. 398; Commissioner v. Highway Trailer Co., 72 Fed. (2d) 913; certiorari denied 293 U.S. 626. This leaves for consideration the issue as to whether the respondent erred in decreasing petitioner's *414 basis for depreciation for 1945 from $5,500 to $3,500 upon the cottage at Cape May, and from $5,000 to $1,000 on the furniture. Upon the record we think that the action in decreasing the basis for depreciation on the cottage to $3,500 for the taxable year was in error. Certainly some of the consideration of $4,000 paid for the premises, consisting of the lot, house and contents, by petitioner was allocable to the house, and although we have merely a general statement that the improvement made after acquisition were not less than $6,000, the detailed testimony as to the character of the improvements does establish a substantial amount as expended on the house for this purpose and one which could not be much less than the sum of $6,000 stated as a minimum by petitioner. We think the evidence sustains a cost of not less than $5,500 for these items, and they had been used but little from the time the expenditures were made until the premises were converted to a business purpose. The fair market value of the depreciable asset represented by the house at date of its conversion to business use, if not in excess of cost, is the proper basis for depreciation. Mary Louise Bok, 46 B.T.A. 678; *415 affd. 132 Fed. (2d) 365; Bert P. Newton, 11 T.C. 512. As to this item we hold that the basis for the computation of depreciation on the cottage was $5,500. There appears to be no difference between the parties as to the rate of depreciation used. As to the reduction by respondent from $5,000 to $1,000 as the basis for the furnishings of the cottage, a different condition is shown to exist. These furnishings it appears represented the old, used furniture left on the premises when it was abandoned by the former owner, increased by the purchase of new mattresses for the beds, new drapes, linens, and kitchen utensils. No cost is given for these additions. Petitioner's figure appears to represent an allowance claimed upon his personal furniture from his home in Pennsylvania which was stored in the premises at Cape May. As to this the record is clear that this furniture did not constitute the furnishings of the cottage but the latter was merely used as a storage place. Under such conditions this furniture was not being used for business purposes and is not subject to an allowance for depreciation. The action of the Commissioner with respect to this item is approved. *416 Decision will be entered under Rule 50.